HELEN BEATTIE SMALL, WIDOW, JAMES C. BEATTIE, JR., AND MAE I. BEATTIE, HIS WIFE, MARGARET BEATTIE PALMER AND PRESCOTT W. PALMER, HER HUSBAND, PLAINTIFFS, v. HELEN TUCKER AND F. PHILIP TUCKER, HER HUSBAND, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided June 3, 1960.

*Mr. Charles R. L. Hemmersley,* attorney for the plaintiffs.

*Messrs. Potter and Fisher,* attorneys for the defendants.

DRENK, J. C. C. (temporarily assigned). This is an action for the partition of certain lands and premises and seeking an accounting for rent since the death of last life tenant; and a counterclaim.

Having heard testimony and considered the arguments and memoranda of the respective attorneys, there appears to me to be two principal questions to be determined by the court:

1. Determination of the fractional interest of the parties in question.

2. What is the fractional interest of the plaintiffs and whether or not it extends to the improvements or is in the lands alone.

Each question will be considered separately.

## THE FRACTIONAL INTEREST OF THE PLAINTIFFS.

It appears that the property in question was once an unimproved farm or country estate, formerly owned by Robert J. Dalton, who died January 10, 1899, and located in Goose Neck, Monmouth County, New Jersey.

The provisions of the will of Mr. Dalton, as to the property in question, give rise to the question now being considered. That part which deals directly with the property in question reads as follows:

"I also give, devise and bequeath jointly share and share alike to my daughters Rosamund and Mary Ella my farm or messuage situated at Goose Neck, Monmouth County and State of New Jersey, together with all furniture, plate, horses, wagons and everything belonging to me situated thereon and to their lawful issue, providing however should either die before or without legal issue then the whole of the real estate before mentioned or the share of the one dying, I give, bequeath and devise to my sons Leon and William Dalton and to their issue share and share alike as to and meaning the property situated in Jersey City, Hudson County; the property in Monmouth County at Goose Neck, in case of death of either daughter with or without Legal issue (the aforesaid share mentioned) to my son Leon Dalton, I give, devise and bequeath in case of death of both daughters, he the said Leon Dalton to take the whole of the property aforementioned situated at Goose Neck, Monmouth County and State of New Jersey."

To paraphrase the above, it appears that the will of the testator, Dalton: (1) devised and bequeathed to his two daughters the property in question and to their lawful issue; (2) provided that his son Leon should take the interest of Rosamund or Mary Ella in said premises should either of them die with or without legal issue; (3) provided that should both daughters die without issue, in that event the entire premises in question was devised to Leon.

By reason of the uncertainty generated by the wording of the will of the testator, it was found necessary to have the will interpreted by the then Court of Chancery, *Content v. Dalton*, 121 *N. J. Eq.* 391 (1937), and by the then Court of Errors and Appeals, *Content v. Dalton*, 122 *N. J. Eq.* 425 (1937). Said courts determined that a fee tail vested in Rosamund and Mary Ella which, by operation of the statute of descent, *C. S.* 1921, *paragraph* 11, was changed to a life estate in the two daughters of the testator with vested remainder in their children.

A reading of the two cases demonstrates that neither court made any findings as to whether the children of Rosamond and Mary Ella took *per stirpes* or *per capita*. It was determined by the Chancery Court that upon the death of either Rosamond or Mary Ella, the son Leon would take

a life estate in the event that either of said daughters died without issue. The same court also determined that the provision for a devise to Leon in fee should take effect only if both daughters predeceased the testator. The testator, Roland Dalton, was survived by both daughters; Rosamond, with one child; and Mary Ella, with six children. Should this court determine that the remainder to the grandchildren of testator vested *per capita*, each grandchild would have a one-seventh interest in the fee. While if it is determined that the gift were vested *per stirpes*, the child of Rosamond would have a vested interest in one-half of the fee and the six children of Mary Ella would have a vested interest in the remaining one-half of the fee, in which case each would have a one-twelfth vested interest.

The present plaintiffs are three of the six children of Mary Ella and would have, in the first event above set forth, a three-sevenths interest, and in the latter event above set forth an individual interest of three-twelfths, or a total of one-quarter of the remainder interest.

It appears that the defendant Ellen Tucker acquired the life estate of the daughters, Rosamond and Mary Ella, and the remainder interest of Edmund B. Reynolds, son of Rosamond, as well as the remainder interest of three sons of Mary Ella, Lawrence Beattie, Gordon Beattie and Frank Beattie.

Plaintiffs urge upon the court that they took their interest *per capita* and are entitled to a three-sevenths interest in the property in question; while defendants maintain they are entitled to one-quarter interest, having taken their share *per stirpes*. Without quoting from the *Compiled Statutes, page* 1921, *section* 11, it appears to me that the statute directly vests the fee in children of life tenants in their parents' share as tenants in common. It therefore appears to provide for descent *per stirpes*. This is the act applied by the Court of Chancery and the Court of Errors and Appeals in *Content v. Dalton, supra*. It is to be noted that the testator devised the premises to his two daughters "jointly

share and share alike," demonstrating very clearly that he wanted his two daughters to hold their interests equally and concurrently for life and upon their respective deaths the remainder was to descend to "their issue." It appears to be clear that the testator meant the issue of both.

Applying the statute above quoted, it limits the descent to the children of the two daughters, permitting representation *per stirpes* for any children who died.

Therefore the child of the devisee Rosamond was vested with the remainder of her life interest, and the children of Mary Ella were vested with the remainder of her life interest. I can find no support for the various arguments offered on behalf of the plaintiffs either in the statute above quoted, or in the findings of *Content v. Dalton, supra,* or in the provisions of the will itself.

The most impressive authority quoted by counsel appears to me to be the case of *Wright v. Gaskill,* 74 *N. J. Eq.* 742 (*Ch.* 1908), where the facts seem to be nearly similar to those presently in issue. See also the case of *Sandford v. Stagg,* 106 *N. J. Eq.* 71 (*Ch.* 1930). The oldest case in New Jersey dealing with the subject that I have found is that of *Scudder v. Vanarsdale,* 13 *N. J. Eq.* 109 (*Ch.* 1860), which was cited with approval recently in the case of *Brown v. Neeld,* 26 *N. J. Super.* 240 (*App. Div.* 1953), and even more recently in the dissenting opinion of Justice Francis in *In re Pistor's Estate,* 30 *N. J.* 589, 595 (1959). The majority opinion in the latter case, which was affirmed on the opinion of Judge Goldmann below, *In re Pistor's Estate,* 53 *N. J. Super.* 139 (*App. Div.* 1958), in no way disturbs the law as laid down in *Scudder v. Vanarsdale, supra,* because the case then before the court dealt with the consideration and interpretation of a will that provided for a gift to "heirs at law, equally, *per stirpes* and not *per capita.*" It therefore appears to me that the plaintiffs herein are each limited to a one-twelfth interest in the premises in question or a total of one-fourth.

## DOES THE FRACTIONAL INTEREST OF THE PLAINTIFFS APPLY TO THE LAND ALONE OR TO THE LAND AND IMPROVEMENTS.

From the testimony adduced before me, it appears that the defendant Helen Tucker bought the premises in question at a public auction in the summer of 1935. At this time she was of the opinion that she had acquired the entire title. The premises consisted of unimproved land covered with brush and wild grass; the water front was grown over with weeds and was low lying and subject to floods. The defendants commenced improvements on the premises; a dwelling was completed in the fall of 1936; landscaping was done in that year and in the following spring; sometime in 1937 a bulkhead was constructed along the water front. During this time the case of *Content v. Dalton, supra,* was pending and was decided March 1, 1937. There is no proof that the defendants had any knowledge of its pendency or of its decision, not being parties to it, until sometime late in 1937.

Thereafter the defendants continued to improve and beautify the property for their own enjoyment. Plaintiffs allege that the defendants improved the property to the detriment of the plaintiffs, and in effect to embarrass the plaintiffs by encumbering plaintiffs' estate and to hinder partition. It is to be borne in mind that defendant Mrs. Tucker has acquired two life interests in the premises and, by reason of the findings made heretofore, a three-fourths interest in the reversion. It is also to be borne in mind that plaintiffs received their interest through the will of Robert Dalton and thereby acquired an interest in unimproved land.

This interest, of course, they still have; it has naturally been augmented by the increase in value over the years. They, however, also lay claim to a portion of the increased value by reason of the improvements made by the defendants, their co-tenants. Arthur T. Schmidt, Esquire, wrote to

Mrs. Tucker on November 8, 1937, concerning the judgment entered in *Content v. Dalton, supra,* to which she did not reply. A further letter was written on April 27, 1938, to which there was no response. Thereafter there was no correspondence on behalf of the plaintiffs until the letter of January 21, 1957, which was followed by an answer from Mrs. Tucker on February 12, 1957. A reply was written on February 13 to Mrs. Tucker, to which reply there was no answer. Then followed a letter of March 12, 1957 to Mrs. Tucker, which was answered by letter of April 2, 1957 by the attorney for Mrs. Tucker.

It is particularly to be noted that the complaint herein was not filed until February 18, 1958.

There is no proof that the improvements were not made honestly. Furthermore, it appears from the testimony of Mr. and Mrs. Tucker that the improvements were made solely for the purpose of improving the property for their own convenience and enjoyment, and in no way to embarrass the co-tenants or to encumber their estate.

It appears to me that the mere fact that a tenant makes improvements is no bar to equitable partition, *Hall v. Piddock,* 21 *N. J. Eq.* 311 (*Ch.* 1871); *Shipman v. Shipman,* 65 *N. J. Eq.* 556 (*Ch.* 1904); *Keneasler v. Erb,* 83 *N. J. Eq.* 625 (*E. & A.* 1914); *Kessler v. Smith,* 2 *N. J. Mis.* 1119 (*Ch.* 1924).

Under the above-cited cases I am of the opinion that the plaintiffs are entitled to a total one-fourth interest in the value of the land without the improvements; that the defendants are entitled to three-fourths of the value of the land as if the premises had not been improved, plus the entire value of the improvements. There was lengthy testimony adduced before me as to the value of the land in question and surrounding similar premises, as well as the value of the improvements placed on the premises by the defendants. Testimony was adduced that the land alone had a present value ranging between $10,000 and $15,000. Having considered the testimony of the experts I am of

the opinion that the land alone has a present value of $13,500, and I therefore so find. There is no dispute in this matter as to whether or not there should be a partition. Both plaintiffs and defendants pray for such relief. As to such prayer, I find that the premises cannot be physically partitioned, and while ordinarily a sale would be ordered under the supervision of the court, with division of the proceeds to be made in accordance with these findings, I am of the further opinion that such a sale would be inequitable to the defendants. The defendants have made extensive improvements to the premises, honestly and for the purpose of enjoying the said premises themselves and not to embarrass the plaintiffs or to encumber their estate and in no way to hinder partition.

I do, therefore, find that the defendants should pay to the plaintiffs the sum of $3,375, to be distributed or paid to the plaintiffs as follows: to Helen B. Small, $1,125; to James G. Beattie and Mae I. Beattie, his wife, $1,125, and to Margaret Beattie Palmer and Prescott W. Palmer, her husband, $1,125, together with costs of this suit. The sum of $3,375 to be a lien upon the premises until paid.

An appropriate judgment will be signed upon presentation.